## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL J. FIRCA,

               Plaintiff,

       v.

FRANK J. BISIGNANO,
*Commissioner of Social Security*

           Defendant.

No. 22-cv-06092

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael J. Firca asks this Court to reverse and remand the decision of the Commissioner of Social Security that denied his request for disability benefits and supplemental security income. (Dkt. 10 at 1.) The Commissioner has moved for summary judgment. (Dkt. 16; Dkt 17 at 1.)

Although the bulk of the administrative law judge's work was sound, the ALJ erred in crafting the hypothetical posed to a vocational expert consulted as part of the administrative process. Because the hypothetical was legally flawed, it could not constitute substantial evidence on which the ALJ could properly rely in conducting the required multistep analysis and determining that Plaintiff could adapt to other work.

Accordingly, and as explained more fully below, the Commissioner's motion is granted in part but denied in part, and the case is remanded for further proceedings

to determine whether Plaintiff can adjust to other work in the national economy.

## I.   BACKGROUND

Plaintiff Michael J. Firca filed claims for supplemental security income and disability benefits with the Social Security Administration. (Dkt. 8 at 10.) Plaintiff alleges that he is disabled and thus entitled to benefits to compensate for his inability to work due to seizures, neurocognitive disorder, and morbid obesity that he developed subsequent to a traumatic brain injury. (Dkt. 8 at10; Dkt. 10 at 1.) Plaintiff reports difficulties with short term memory, focus, balance, standing, and walking. (Dkt. 10 at 1–2.) Plaintiff also alleges that he has attempted to work at several jobs but has been unable to maintain employment. (Dkt. 10 at 1–2.)

The Social Security Administration denied Plaintiff's original claim for benefits and then reaffirmed that decision after reconsideration. (Dkt. 8 at 10.) Plaintiff requested a hearing before an administrative law judge. (*Id.*) The administrative law judge who presided over the hearing denied Plaintiff's requests for disability benefits and supplemental security income. (*Id.*) Plaintiff's appeal was denied by the Social Security Administration Appeals Council, thus exhausting Plaintiff's available administrative remedies. (*Id.*) Plaintiff now seeks judicial review of that decision under 42 U.S.C. § 405(g).

An established five-step, sequential framework applies to any administrative hearing process under 20 C.F.R. § 404.1520(a)(4). In the first step, the ALJ considers Plaintiff's work activity and will not find the claimant disabled if involved in substantial gainful employment. Second, the ALJ considers the severity of medically

determinable physical and mental conditions and will not find the applicant disabled if he or she does not meet standards and durational requirements in 20 C.F.R. § 404.1509.

Third, the ALJ considers the medical severity of the claimant's impairments. If the impairments meet or equal a listing in Appendix 1 of the subpart and the durational requirements are met, then the applicant will be considered disabled. Fourth, the ALJ considers the residual functional capacity (RFC) of the applicant and his or her relevant past work. If the applicant remains able to do the same past work, then the applicant is not disabled.

Fifth, and finally, the ALJ considers the residual function capacity of the applicant, along with the applicant's age, education, and work experience, to determine whether the applicant can adjust to other work that exists in sufficient numbers in the national economy. If so, the applicant is not disabled. If the applicant cannot adjust to other work, the ALJ will determine that he or she is disabled. Unlike the previous four steps where the burden is on the claimant to prove a disability, the burden of proof rests on the ALJ at step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

The ALJ proceeded through the requisite five step disability analysis and determined that Plaintiff is not disabled. In step one, the ALJ determined that Plaintiff did not engage in any substantial gainful employment. (Dkt. 8 at 12.) In step two, the ALJ determined that Plaintiff's obesity, history of seizures, and neurocognitive disorder constituted severe impairments. (Dkt. 8 at 12–13.)

In step three, the ALJ determined that Plaintiff's impairments, singly and in concert, did not medically equal a listing under 20 CFR Part 404, Subpart P, Appendix 1. (Dkt. 8 at 13.) When considering the following categories under listing 12.02 for neurocognitive disorder (found in Appendix 1), known as "paragraph B criteria," the ALJ will determine that the plaintiff is disabled if there is one extreme or at least two marked limitations in the categories. (Dkt 8 at 14.) The ALJ found moderate limitations in understanding, remembering, and applying information and in concentration, persistence, and pace. (*Id.)* The ALJ also found mild limitations in managing oneself. (*Id*.) The ALJ found no limitations in interacting with others. (*Id*.) The paragraph B criteria were not satisfied because no extreme or marked limitations were found.

In step four, the ALJ found that Plaintiff's medical conditions could reasonably cause Plaintiff's alleged symptoms, although the alleged severity of the symptoms was not supported by medical evidence. (Dkt. 8 at 16.) The ALJ considered numerous medical records and the opinions of several medical professions to determine that Plaintiff exhibited mild neurocognitive deficits and limited Plaintiff to simple, one to two step tasks, with no exposure to work hazards. (Dkt. 8 at 17.) The ALJ specifically relied on the opinion of Dr. Hinchen in determining that Plaintiff should be limited to medium level work. *Id*. The ALJ also partially credited the opinion of Plaintiff's consultative examiner, Dr. Mary Schmidt, but the ALJ determined that Dr. Schmidt's opined limitations were too restrictive based on other available medical records and the psychiatric exam conducted by Dr. Fine. (Dkt. 8 at 17-18.) Finally, the ALJ relied

on previous administrative medical findings from Dr. Williamson and Dr. Hudspeth to determine Plaintiff could carry out simple one to two step tasks. (*Id*. at 18.) The ALJ also determined that Plaintiff could not return to his past work. (*Id*. at 18–19.)

Finally, in step five, the ALJ determined that Plaintiff could adapt to other jobs that existed in sufficient numbers in the national economy. (*Id*. at 18-20.) In making this determination, the ALJ relied on the testimony of a vocational expert who opined that Plaintiff would be capable of carrying out at least three different occupations: hand packer, assembler, and inspector. (*Id*. at 19-20, 65-67.) Based on that evidence, the ALJ determined that Plaintiff was not disabled. (*Id*. at 20.)

Plaintiff advances four arguments in support of his appeal. Plaintiff first argues that the ALJ failed to properly construe the evidence and account for Plaintiff's deficits in the Residual Function Capacity assessment. (Dkt. 10 at 7.) Second, Plaintiff contends that the ALJ improperly rejected the neuropsychologist's opinion that Plaintiff's limitations are inconsistent with full-time work. (*Id*. at 12.) Third, Plaintiff argues that the ALJ failed to account for Plaintiff's exertional deficits, exacerbated by morbid obesity, in the RFC assessment. (*Id*. at 13.) Fourth, Plaintiff argues that the ALJ failed to meet the requisite burden of proof in step five by determining that Plaintiff could perform other jobs inconsistent with the RFC. (*Id*. at 15.) Fifth, and finally, Plaintiff argues that the hypothetical posed to the vocational expert was fatally flawed. (*Id*. at 10.) These arguments are addressed in turn.

## II.    STANDARD OF REVIEW

In reviewing the record of a social security adjudication, the role of a federal court is limited. The decision of an Administrative Law Judge (ALJ) cannot be vacated if it is supported by substantial evidence. *Biestek v. Berryhill*, 587 U.S. 97 (2019); 42 U.S.C. § 405(g). Substantial evidence (not an onerous standard) means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103; *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It is met when the ALJ "builds a logical bridge" between the findings of fact and conclusions while also articulating the reasoning behind those conclusions in a manner "sufficient to permit meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). If the administrative decision lacks evidentiary support or is "so poorly articulated as to prevent meaningful review," the case must be remanded to the Commissioner. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Reviewing courts "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Also relevant to any review of an ALJ's decision is the *Chenery* doctrine, which precludes a party from supplementing the rationale of the ALJ with after-the-fact reasoning or speculation. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943). Speculation is not permitted, but the Court may consider the reasoning of the ALJ in a holistic fashion. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021).

When reviewing the hypothetical posed to a vocational expert to determine whether the expert's opinion constitutes substantial evidence, courts must consider whether the hypothetical alerts the vocational expert to the totality of the plaintiff's limitations. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). Although the ALJ is not required to use specific language, simple terms that do not disclose the basis of a limitation will not suffice. *See id.* A court may impute knowledge of limitations excluded from the hypothetical to the vocational expert when the record reflects that the expert was independently aware of those limitations and did not confine proffered testimony to the context of the hypothetical that the ALJ relies upon. *See Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). But when the ALJ relies upon testimony predicated on a fatally flawed hypothetical, the ALJ's decision does not rest on substantial evidence. *See O'Connor-Spinner*, 627 F.3d at 620–621.

## III. DISCUSSION

### A. The ALJ's Balancing of the Evidence was Proper

Plaintiff argues that the ALJ erred in the third step of the analysis when assessing his condition against the "Paragraph B" functional areas. (Dkt. 10 at 7.) Plaintiff claims that the ALJ engaged in impermissible "cherry-picking" by highlighting certain material facts but omitting others. *Id.* Plaintiff takes issue with the ALJ's summation of relevant facts and medical evidence, including several medical exams in the 2020–2021 period and the assessment of Dr. Schmidt. (Dkt. 10 at 7–8.)

Plaintiff makes several arguments about the sufficiency of the ALJ's assessment of the evidence presented. Plaintiff argues that the ALJ erred in determining only moderate limitations existed in the Paragraph B categories of concentration, persistence, and pace, largely based upon the ALJ's unfavorable assessment of Dr. Schmidt's report. (Dkt. 10 at 9.) Plaintiff argues that the ALJ considered Dr. Schmidt's report and the findings of other mental status exams unremarkable, contrary to their true content. (Dkt. 10 at 13.) Plaintiff further argues that the ALJ relied on an internally inconsistent report noting relevant responses when Plaintiff claims some responses were not relevant. (Dkt. 10 at 13.) Plaintiff also takes issue with the ALJ's assessment of evidence of Plaintiff's alcohol abuse and contends the ALJ unduly attributed Plaintiff's deficits to intoxication. (Dkt. At 9-10.) Finally, Plaintiff argues that the Residual Function Capacity (RFC) was inadequate because it failed to explicitly mention moderate limitations in concentration persistence and pace and because it lacked the opinion of a medical professional translating the concentration, persistence, and pace findings into an RFC assessment. (Dkt. 10 at 11.)

1. The ALJ did not Improperly Reject the Limitations Proposed by Dr. Schmidt

Plaintiff's argument that the ALJ's partial rejection of Dr. Schmidt's report was improper is unconvincing. Plaintiff claims that the ALJ was misleading in quoting the summary of Dr. Schmidt's report. (Dkt. 10 at 8.) But the ALJ properly quoted the exact wording of the report, which states, "During the current evaluation, overall cognitive skills are mildly impaired with continuing difficulties with new

learning and rapid forgetting, attention, processing speed, and distractibility." (Dkt. 8 at 687.) Although the report details the medical challenges faced by Plaintiff, the summary and conclusion are clear and unambiguous: Plaintiff exhibits mild cognitive limitations with certain distinct deficits. (*Id.*)

The ALJ's rejection of Dr. Schmidt's report was supported by multiple pieces of evidence. The ALJ gave Dr. Schmidt's report partial credit but determined that it lacked complete credibility considering the entire medical record. (Dkt. 8 at 18.) As in *Warnell*, where the ALJ discounted medical opinions that were favorable to Plaintiff based on multiple pieces of evidence, the ALJ's conclusions are substantiated by other lines of evidence. *See Warnell*, 97 F.4th at 1054. Many of the cited pieces of evidence also come from treating physicians and medical staff. (Dkt. 8 at 17–18.) Moreover, the ALJ relied on the reports of several administrative medical professionals that showed Plaintiff could engage in medium work and carry out simple one to two step tasks. (*Id.*)

### 2. The Residual Function Capacity Assessment was Proper

Plaintiff argues that the RFC was deficient because it did not include all the limitations he believes are appropriate. (Dkt. 10 at 9.) Although the ALJ is required to include limitations supported by the medical record, Plaintiff was not entitled to have all proffered limitations listed: only those limitations supported by the record were required to be considered. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Schmidt v. Astrue*, 496 F.3d 833, 845–46 (7th Cir. 2007). The ALJ is charged with balancing evidence and determining credibility, something this Court is not

9

empowered to do. See *Gedatus*, 994 F.3d at 900. Here, the record reflects that the ALJ considered Plaintiff's limitations in concentration, persistence, and pace and utilized the reports of medical professionals in determining the appropriate corresponding limitation. (Dkt. 8 at 14, 17.) Put another way, the ALJ properly supported her reasoning and built a logical bridge using sufficient evidence.

### 3. The ALJ's Consideration of Plaintiff's Alcohol Use was Supported by the Record

Plaintiff further argues that the ALJ "implied that any deficits arose of alcoholism, and not of his actual limitations." (Dkt. 10 at 10.) Plaintiff's primary objection centers around the ALJ's discussion of several hospitalizations for intoxication. *Id*. Discussing one such incident, the ALJ stated, "[T]reatment records from August 2020 show that the claimant's impairments appeared to center around significant alcohol abuse." (Dkt. 8 at 16–17.)

The Commissioner counters by citing the Social Security Act Section 223(d), which sets the definition for a disability, and Social Security Ruling 13–2p, 2013 WL 621535, (Feb. 20, 2013), prohibits the ALJ from adjudicating someone disabled if alcoholism or drug addiction would be a contributing factor to the determination. (Dkt. 17 at 2–3.) Moreover, the Commissioner recounts several pieces of evidence relied upon by the ALJ where the plaintiff was not intoxicated and appears to show a lower level of impairment. (Dkt. 17 at 14.)

The ALJ did not unreasonably consider evidence of Plaintiff's alcohol use but instead fairly considered treatment records that indicate substantial alcohol abuse by Plaintiff since at least age 28. (Dkt. 8 at 581–85.) The ALJ noted that medical

records explicitly state that some episodes of memory loss were attributed to multiple causes including Plaintiff's 2014 TBI and alcohol abuse. (Dkt. 8 at 17, 586.)

Despite this discussion of alcohol abuse, the ALJ also explicitly considered the opinions of other medical experts who observed Plaintiff while not intoxicated. Dr. Fine's psychiatric examination noted only mild neurocognitive impairment, but Dr. Fine also considered Plaintiff's ability to recall numbers, generally orient himself, and access recent memories. (Dkt. 8 at 17, 395–96.)

Overall, the evidence can reasonably be interpreted to show that alcohol abuse contributed to the deficits experienced by Plaintiff on certain occasions, and it was not unreasonable for the ALJ to consider it in the manner that she did. The ALJ does not appear to have over-relied on reports of alcohol abuse and built a sufficient logical bridge, supported by a variety of evidence, to support her findings. Remand is not appropriate on this issue.

4. The RFC Assessment Included Sufficient Supporting Evidence

Plaintiff next contends that the RFC was inadequate because it did not include the opinion of a medical professional who translated the concentration, pace, and persistence findings into an RFC assessment. Plaintiff also argues that the ALJ did not make a showing that the RFC adequately accounts for the individual's demonstrated psychological symptoms. (Dkt. 10 at 11.) In support of this argument, Plaintiff cites *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). (Dkt. 10 at 11.) In *Jozefyk*, the Seventh Circuit upheld an RFC that, like this one, made accommodations for the claimant's psychological conditions that tended to worsen at

work. *Jozefyk*, 923 F.3d at 498. *Jozefyk* does not, as Plaintiff suggests, support the contention that the opinion of a medical professional is needed to translate the concentration pace and persistence findings directly into an RFC. *Jozefyk* instead supports the decision of the ALJ in this case: the Seventh Circuit upheld an RFC that accounted for a certain level of medically supported impairment in concentration, persistence, and pace, even when the plaintiff in that case argued that his impairment was more severe. *See id*.

The ALJ considered a variety of medical evidence and incorporated the opinions of several medical professionals. As did the ALJ in *Jozefyk*, the ALJ discussed the variety of medical problems facing Plaintiff, testimony from the administrative hearing, and objective medical evidence. *See id*. She determined that the evidence presented tended to support a showing of mild cognitive impairment. *See id*. Specifically, the ALJ relied on the May 2021 neuro–psychological exam, which concluded that Plaintiff suffers from a major neurocognitive disorder including problems with "new learning and rapid forgetting, attention, processing speed, and distractibility." (Dkt. 8 at 17.) The ALJ directly referred to these deficits in determining Plaintiff was limited to simple, one to two step tasks. (Dkt. 8 at 17–18.) Moreover, the ALJ credited the administrative medical findings of Doctors Hudspeth and Williamson who also determined that Plaintiff should be limited to simple, one to two step tasks. (*Id*.) The ALJ specifically noted Plaintiff's limitations in concentration, persistence, and pace in step three and incorporated documentation

from medical professionals showing that Plaintiff could still carry out a reduced range of work. (*Id.* at 17–18.)

In sum, the ALJ balanced the evidence and reasonably supported her conclusions of fact throughout the decision. Stated differently, the RFC supports the reasoning of the ALJ and includes substantial evidence in the form of medical records, expert reports, and testimony to support the ALJ's determinations.

### B. The ALJ did not Fail to Accommodate Plaintiff's Deficits

Plaintiff argues that it was improper for the ALJ to partially discount the medical opinion of Dr. Schmidt based on the opinion of the psychiatric medical examiner, which Plaintiff characterizes as "internally inconsistent." (Dkt. 10 at 13.)

The ALJ's resolution of conflicting evidence was supported by substantial evidence; Plaintiff asks this Court impermissibly to reweigh the evidence relied upon by the ALJ. *See Gedatus*, 994 F.3d at 900. Plaintiff claims the ALJ erred primarily in finding that Dr. Schmidt's assessment was only partially credible. (Dkt. 10 at 12–13.) According to Plaintiff, this was an erroneous decision based on an inconsistent report from another expert. (Dkt. 10 at 13.) A review of the administrative record, however, demonstrates that Plaintiff's reading of the ALJ's decision is flawed. As the ALJ found, Dr. Schmidt's opined limitations:

> [A]ppear overly restrictive in light of the evidence overall, as the claimant generally showed intact mental status throughout the period at issue and was observed by the other consultative examiner (Ex. 6F) to have only mild neurocognitive deficits (Exs. 1F/4; 5F/51; 6F; 8F/9; 9F; 10F/7.) (Dkt. 8 at 13.)

Contrary to Plaintiff's argument, the ALJ cited numerous sources of evidence, including medical records and Dr. Fine's independent psychiatric evaluation. (Dkt. 8

13

at 13.) Plaintiff argues it was improper for the ALJ to rely on the psychiatric examination report in partially discounting Dr. Schmidt's report because the psychiatric examination report was "internally inconsistent." *Id*. According to Plaintiff, the report was inconsistent because it stated Plaintiff gave "relevant responses" when Plaintiff was asked about concentration but stated Plaintiff's memory was bad in response. *Id*.

Plaintiff's argument is unconvincing. The examiner's statement (that Plaintiff gave relevant responses when he was asked about concentration but replied that Plaintiff's memory was bad) is arguably not inconsistent. First, the statement that Plaintiff's responses were relevant is not in the same section of the report as the discussion of Plaintiff's memory and focus. (Dkt. 8 at 594–95.) Second, even if the examiner's statement is inconsistent, the report contains numerous accounts of various tests carried out by the examiner where Plaintiff did provide relevant responses. (*Id*. at 593–96.) Third, nothing in the ALJ's decision suggests that the ALJ relied exclusively on the one narrow passage cited by Plaintiff. Finally, the ALJ relied on multiple different medical records in discounting Dr. Schmidt's report including those that stated there were "no focal neurological deficits observed." (Dkt. 8 at 18, 457.) Based on this record, the ALJ's reliance on the examiner's report was not unreasonable or unsupported.

Ultimately, the ALJ gave some weight to reports finding deficits in Plaintiff's concentration and assessed a mild limitation in Plaintiff's concentration, persistence and pace. (Dkt. 8 at 17–18.) Plaintiff's limitations were therefore properly addressed.

14

Although Plaintiff may object to the weight the ALJ placed on certain pieces of evidence, that is not a sufficient basis for reversing or remanding the decision of an ALJ. *Gedatus*, 994 F.3d at 900.

As the record reflects, the ALJ engaged in a thorough evaluation of numerous pieces of evidence and testimony and met the burden of building a logical bridge between facts and conclusions. The ALJ also met and exceeded the "minimal" reporting requirements and provided numerous citations throughout the decision letter to support her findings and permit meaningful judicial review. *See Warnell*, 97 F.4th at 1053. Determinations as to the weight and credibility of the evidence are the province of the presiding ALJ, not of this Court. Remand is not appropriate in situations where, as here, the ALJ makes supportable findings as to the weight and credibility of evidence that meet minimally required reporting obligations.

## C. The Record Reflects the ALJ's Adequate Consideration of Plaintiff's Obesity

Plaintiff argues the ALJ failed to fully account for obesity in step three of the analysis and merely inserted boilerplate language into the decision that is insufficient to satisfy the requirements of building a logical bridge to support the stated conclusion. (Dkt. 10 at 13–14.)

As the ALJ stated in step three of the decision, she fully considered Plaintiff's obesity in accordance with applicable Social Security Administration regulations and guidelines. (Dkt. 8 at 13–14.) Plaintiff's contention that the discussion in this section was relatively boilerplate is accurate; however, consideration of Plaintiff's obesity did not end there. As Plaintiff points out, the ALJ again considered obesity in step four

and noted that medical records state Plaintiff's "body habitus" did not significantly impact physical functionality. (Dkt. 10 at 13; Dkt. 8 at 16.)

Plaintiff contends that a more significant consideration of obesity might have resulted in a different outcome. (Dkt. 10 at 13–14.) Plaintiff argues that obesity can cause fatigue which can in turn worsen mental and physical functioning. (Dkt 10 at 14.) Plaintiff again cites the report of Dr. Schmidt, who noted Plaintiff's fatigue during in-office testing; however, Dr. Schmidt did not attribute this fatigue to any discernable cause. (Dkt. 8 at 686.) Further, the ALJ accounted for Plaintiffs' obesity in determining he could perform modified medium level work. The ALJ specifically cited several exhibits from the administrative record when making that determination and adopted the recommended limitations from Doctor Hinchen. (Dkt. 8 at 16–17, 107.)

When reviewing the determination of the ALJ, this Court is not required to analyze the ALJ's logic in lockstep with the five-step analysis and may review the ALJ's logic holistically. *See Zellweger*, 984 F.3d at 1252. A more thorough examination of the evidence in the fourth step may compensate for a cursory discussion at step three. *See id*.

An ALJ's failure fully to consider obesity is not always a reversible error. In *Skarbek v. Barnhart*, the Seventh Circuit applied the harmless error doctrine and refused to remand a decision to the ALJ when there was no explicit consideration of obesity in the record and Plaintiff merely speculated that obesity would make it harder to walk and stand because the ALJ factored in appropriate limitations

proposed by doctors aware of Plaintiff's obesity. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). And the Seventh Circuit again denied remand when obesity was not explicitly considered because no opinion in the record identified obesity as a significant aggravating factor. *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006).

The harmless error rule may also apply when the plaintiff does not clearly explain how obesity exacerbates other medical conditions. The Seventh Circuit has repeatedly applied the harmless error doctrine when a Plaintiff fails to clearly explain how obesity hampers his or her ability to work. *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015); *Dornseif v. Astrue,* 499 F. App'x 598, 600 (7th Cir. 2013). If it is predictable with "great confidence" that the agency will reinstate its decision on remand "because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

The ALJ appropriately considered Plaintiff's obesity throughout the decision. A holistic review of steps three and four reveals that the ALJ specifically considered Plaintiff's morbid obesity in assessing a limitation to medium work. (Dkt. 8 at 17.) As the ALJ noted, moreover, Plaintiff's "limitation to modified medium level work is consistent with the evidence overall, including [Plaintiff's] noted TBI from 2014, with residual seizure, as well as noted morbid obesity during the period at issue," and then cited no fewer than five exhibits from the record in support. (Dkt. 8 at 17.) These records included notes about the patient's morbid obesity. (Dkt. 8 at 584.)

17

Although the record is replete with references to Plaintiff's weight, there is a paucity of evidence showing how obesity, in concert with his other medical conditions, rendered Plaintiff disabled. Plaintiff cites Dr. Schmidt's report as evidence of the disabling effect of obesity as a comorbidity, but even Dr. Schmidt did not make that assertion in the passage cited by Plaintiff. (Dkt. 10 at 13; Dkt. 8 at 685–688.) In effect, Plaintiff argues that obesity *might* cause more fatigue which *might* lead to greater physical or cognitive impairment. This is insufficient to merit remand.

Plaintiff also appears to argue that it was improper to hold his hearing telephonically because it prevented the ALJ from observing Plaintiff dealing with his limitations in a courtroom setting. (Dkt. 10 at 14.) This position is unpersuasive considering Plaintiff consented to a telephonic hearing amidst a global pandemic. (Dkt. 8 at 34.) Courts confronted with similar arguments have likewise found them unpersuasive given the plaintiff's consent and the prevailing pandemic. *See, e.g., Kimberly R.A. v. Comm'r of Soc. Sec.*, No. 421CV04153SLDJEH, 2022 WL 18599551, at *6 (C.D. Ill. Nov. 28, 2022), *report and recommendation adopted sub nom. Kimberly R. A. v. Kijakazi*, No. 421CV04153SLDJEH, 2023 WL 420684 (C.D. Ill. Jan. 26, 2023).

Plaintiff, finally, cites *Mangan v. Colvin* and *Parker v. Colvin* as persuasive evidence that this situation merits remand. (Dkt. 10 at 14.) Those cases, however, are distinguishable. In *Mangan*, the ALJ "gave no indication at all as to how she considered the limiting effects of obesity or what evidence she relied on." *Mangan v. Colvin*, 2014 WL 1908937, at *10 (N.D. Ill. May 13, 2014). In *Parker*, the ALJ only included a single brief boilerplate statement that obesity was considered. *See Parker*

*v. Colvin*, No. 2:15–CV–316–JEM, 2016 WL 4435622 at *4 (N.D. Ind. Aug. 22, 2016). In this case, the ALJ did more than include a single boilerplate statement; she cited numerous pieces of evidence, discussed obesity in the context of other conditions, and considered it in assessing the occupational limitations applicable to Plaintiff. (Dkt. 8 at 17.) The ALJ thus sufficiently considered Plaintiff's obesity.

The ALJ adequately considered obesity in the full context of Plaintiff's medical history and built a sufficient logical bridge using the exhibits available. There is no reversible error on this issue.

### D. The ALJ Did not Err When Assigning Jobs in Step 5

Plaintiff objects to the specific jobs that the ALJ determined Plaintiff could hold in step five. (Dkt. 10 at 15.) Plaintiff argues that the ALJ failed to meet the burden of proof at step five because the decision included jobs designated at GED level two when the RFC limited Plaintiff to jobs at the GED one level. (Dkt. 10 at 15.) Plaintiff is incorrect that all the jobs listed in step five of the ALJ's opinion are inconsistent with the RFC assessment completed in step four.

The ALJ accepted the testimony of a vocational expert who testified that Plaintiff could maintain employment as a hand packer, assembler, or inspector, and that there were enough of these positions in the national economy. (Dkt. 8 at 65–67.) Plaintiff claims that all of these positions require a GED level two, which requires that a person be able to apply common sense understanding to carry out detailed but uninvolved written and oral instructions. (Dkt. 10 at 15.) Plaintiff argues that this is inconsistent with the RFC assessment which offers a lower GED level of one. (Dkt.

10 at 15.) The Commissioner responds that these positions do not require a GED level of two and that, even if these occupations do require such a GED level, this is not inconsistent with the RFC restrictions limiting Plaintiff to simple, one to two step work. (Dkt. 17 at 12–13.)

A review of the Department of Labor's Dictionary of Occupational Titles (DOT) reveals some inconsistencies with both the ALJ's report and the arguments of the parties. According to the vocational expert's testimony and the ALJ's decision letter, Plaintiff could work as a "Hand Packer, DOT code 920.687-066." (Dkt. 8 at 20; 65–67.) A review of the DOT shows that this DOT code refers to the Carrier Packer position, which is distinct from the Hand Packer position. In any event, both positions require a GED reasoning level two, math level one, and language level one.[1] Even if this makes such a position inconsistent with the RFC, it is a harmless error: the other cited positions are sufficient to support the ALJ's determination and are consistent with an assessed GED level of one.

The assembler and inspector occupations provided by the vocational expert are GED level one positions across reasoning, math, and language categories.[2] Moreover, the occupational expert testified that the assembler position included 90,000 jobs in

---

[1]  CARRIER PACKER (protective dev.), Information Technology Associates, https://occupationalinfo.org/92/920687066.html (last visited: Sept. 11, 2025); PACKAGER, HAND (any industry), Information Technology Associates, https://occupationalinfo.org/92/9 20687066.html (last visited: Sept. 11, 2025.)

[2]  OALJ Law Library, DOT, Benchwork Occupations 737.381-010 to 761.684-010, U.S. Department of Labor, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/ DOT07D (last visited Sept. 11, 2025); OALJ Law Library, DOT, Machine Trades Occupations 622.381-018 to 651.362-030, U.S. Department of Labor, https://www.dol.gov/agencies/ oalj/PUBLIC/DOT/REFERENCES/DOT06C (last visited Sept. 11, 2025).

the national economy, and that the inspector position included 15,000 jobs in the national economy. (Dkt. 8 at 67.) In many such cases, courts have held that positions in far less abundance have constituted significant enough numbers to sufficiently support an ALJ's determination that a claimant is not disabled. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (finding 1,400 available jobs in a single occupation sufficient); *Anderson v. Astrue*, No. 8 C 4917, 2009 WL 2366088, at *14 (N.D. Ill. Jul. 28, 2009) (finding 10,800 available jobs sufficient.) The GED levels of these occupations and the combined 105,000 total positions in the national economy are more than sufficient to constitute substantial evidence to support the ALJ's determination that Plaintiff is not disabled and could adapt to other work.

Given that this case is, as discussed below, being remanded for further proceedings relating to the hypothetical posed to the vocational expert, if the same occupations are supported by the opinion of the vocational expert, then the logical bridge will be sufficiently grounded to permit the ALJ's ultimate determination. If, on the other hand, these occupations are no longer supported, the ALJ will need to adjust the decision accordingly.

### E. The ALJ's Hypothetical to the Vocational Expert was Flawed

Despite that the ALJ's process and decision were otherwise sound, the case must nonetheless be remanded. That is because hypothetical posed to the vocational expert was flawed in that it did not disclose the full basis of Plaintiff's limitations. It thus cannot be relied upon as substantial evidence.

The hypothetical posed to a vocational expert is an important step in the disability adjudication process. A vocational expert helps the ALJ determine what, if any, jobs the applicant is capable of adjusting to considering his age, education, work history, and residual function capacity. Plaintiff argues that the ALJ failed in crafting the hypothetical by including certain occupational limitations but failing to alert the expert to his moderate difficulties in concentration, persistence, and pace. (Dkt. 10 at 11.)

When crafting a hypothetical for a vocational expert the ALJ must orient the expert to "the totality of a claimant's limitations." *O'Connor–Spinner*, 627 F.3d at 619. An ALJ is not required to include limitations that he or she does not find credible. See *Schmidt*, 496 F.3d at 845–46. The ALJ is also not required to use the exact phrase "concentration, persistence, and pace." *See O'Connor–Spinner*, 627 F.3d at 619–20. A reviewing court may infer a vocational expert's familiarity with the claimant's limitations if the record reflects the expert's independent knowledge of the limitations through review of the medical record or through hearing testimony directly addressing those limitations. *Steele*, 290 F.3d at 942.

Inferring a vocational expert's familiarity with a claimant's limitations, however, cannot be permitted where the record reflects that the vocational expert's testimony was confined to limitations set forth in the ALJ's hypothetical question. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). That is, where the record does not reflect that the vocational expert based his or her conclusions on anything other than the hypotheticals, the

22

Court cannot assume that the vocational expert relied on material outside the hypothetical. *Simila,* 573 F.3d at 521.

An ALJ may rely on the translation of a medical opinion into an RFC assessment in formulating the hypothetical to the vocational expert. *Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002); *Milliken v. Astrue*, 397 F. App'x 218, 221–22 (7th Cir. 2010). But *O'Connor–Spinner* explained that the language conveyed to the vocational expert should provide the medical basis for the limitations. *See O'Connor–Spinner*, 627 F.3d at 619–21. Indeed, the Seventh Circuit remanded in *O'Connor–Spinner* when a similar hypothetical failed to disclose the basis of the plaintiff's limitations in concentration, persistence, and pace. *See id*.

This precedent compels the same result here. In the hypothetical, the ALJ listed the occupational restrictions that apply to Plaintiff; however, she did not explicitly mention Plaintiff's limitations in concentration, persistence, and pace, and instead limited the hypothetical to "simple, routine, and repetitive, 1-2 step tasks." (Dkt. 8 at 67.) Despite this, the ALJ did not include any information that explained the basis for the limitations, thus violating the requirements of *O'Connor-Spinner*. (*Id*.) *See* 627 F.3d at 619–21.

Although the exact use of certain phrases is not required, the ALJ must orient the vocational expert to all of the claimant's relevant limitations. *O'Connor–Spinner*, 627 F.3d at 619–20. In *Adams v. Astrue*, for example, the ALJ mentioned general restrictions like those mentioned here but neglected sufficiently to advise the vocational expert of restrictions based on concentration, persistence, and pace.

*Adams v. Astrue*, 880 F. Supp. 2d 895, 912–13 (N.D. Ill. 2012). Because the record did not show that the vocational expert accounted for these limitations while testifying (despite being present at the hearing), the judge in *Adams* declined to affirm the determination of the ALJ. *See id*.

The record here does not show that the vocational expert independently included information about Plaintiff's limitations in concentration, persistence, and pace in her answer to the ALJ. Although the vocational expert was present for the hearing and confirmed she reviewed Plaintiff's *vocational* records, she did not state that she reviewed Plaintiff's *medical* records. (Dkt. 8 at 65–67.) To be sure, the vocational expert answered hypotheticals for the ALJ and Plaintiff, but she did not provide any indication that her answers to the ALJ reflected information gleaned from medical records or the hearing itself. (Dkt. 8 at 67.) Moreover, there is no suggestion that the ALJ mentioned the opinions of Doctors Williamson or Hudspeth, from which she derived some of the RFC language. (Dkt. 8 at 67.) In view of these circumstances, the Court cannot assume, without more, that the vocational expert incorporated that information in her answers to the ALJ. *See Simila,* 573 F.3d at 521.

A hypothetical posed to a vocational expert is a critical element of the logical bridge that allows an ALJ to translate the RFC into a credible determination about a claimant's ability to perform other work. Even though the ALJ's balance of the evidence and recitation of logic was sound, an incomplete hypothetical that omits critical information about the claimant's limitations cannot support the conclusion of the ALJ that the claimant is not disabled. In this instance, the hypothetical was

flawed because the lack of information about the basis of Plaintiff's limitations does not necessarily exclude from consideration all jobs that Plaintiff is incapable of doing. *See O'Connor-Spinner*, 627 F.3d at 619. Accordingly, because it is not clear that jobs included in step five are consistent with all of Plaintiff's limitations, the ALJ's determination that Plaintiff can work is not supported by substantial evidence. This flaw merits remand.

## IV.    CONCLUSION

The Commissioner's motion is granted in part but denied in part, and the case is remanded for further proceedings consistent with this opinion.

SO ORDERED in No. 22-cv-06092.

Date: September 30, 2025

JOHN F. KNESS
United States District Judge

25